## Lewis Wald v. Pittsburg, C., C. & St. L. R. R. Co.

1. COMMON CARRIERS—*Act of God—The Johnstown Flood.*—A common carrier is not liable for a loss of baggage occasioned by the act of God.

2. SAME—*Contracts of Transportation—By What Law Governed.*— The law of the State in which a contract of transportation is made, governs the rights and liabilities of the parties to it.

**Trespass on the Case.**—Loss of baggage. Appeal from the Superior Court of Cook County; the Hon. ARTHUR CHETLAIN, Judge, presiding.

Heard in this court at the October term, 1895. Affirmed. Opinion filed November 18, 1895.

BURNHAM & BALDWIN, attorneys for appellant, contended that where the negligence of a carrier concurs with an "act of God," and is one of the causes in a direct line producing the loss, the carrier is liable. Michaels v. N. Y. C. R. R. Co., 30 N. Y. 564; Read v. Spaulding, 30 N. Y. 630; Condict v. Grand Trunk R. Co., 54 N. Y. 500; Bostwick v. Baltimore & Ohio R. R. Co., 45 N. Y. 712; Dunson v. N. Y. C. R. Co., 3 Lans. (N. Y. Sup. Ct.) 265; McGraw v. B. & O. R. R. Co., 18 W. Va. 61; Deming v. Grand Trunk R. R. Co., 48 N. H. 455; Read v. St. L., K. C. & M. R. Co., 60 Mo. 199; Pruitt v. Hannibal & St. J. R. Co., 62 Mo. 527; Wolf v. American Ex. Co., 43 Mo. 421; Southern Ex. Co. v. Womack, 57 Tenn. 256; Davis v. Garrett, 19 Eng. Com. Law Rep. (6 Bing.) 716; Williams v. Grant, 1 Conn. 487; Crosby v. Fitch, 12 Conn. 410; Phillips v. Brigham, 26 Ga. 617; Shearman and Redfield on Negligence, Par. 39.

GEO. WILLARD, attorney for appellee, contended that the law of the State of Ohio, in which the contract of transportation was made, governs the rights and liabilities of the parties to this action. Penn. Co. v. Fairchild, 69 Ill. 260.

Under the laws of Ohio and Pennsylvania delay in transportation, whereby an unforeseen or unexpected *vis major* overtakes the vehicle and injures or destroys the freight, is not actionable. Daniels v. Ballentine, 23 Ohio St. 532; Morrison v. Davis, 20 Penn. St. 171.

The same rule has been adopted by other courts of recognized ability and standing. Railroad v. Reeves, 10 Wall. 176; Hoadley v. Nor. Trans. Co., 115 Mass. 304; McClory v. Railroad, 3 Neb. 44.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a suit by the appellant against the appellee to recover the value of appellant's trunk, constituting, with its contents, his personal baggage, which was lost in the great Johnstown flood in 1889, while in the possession of the ap-

pellee as a common carrier between Cincinnati, Ohio, and New York City.

The appellant purchased his tickets in Cincinnati, and was entitled by them to passage from Cincinnati, via Pittsburgh, to New York City, in a car which should, when it reached Pittsburgh, be attached to the limited express train from Chicago, a train which would ordinarily arrive in New York city two hours in advance of what was known as the day express.

The holder of the kind of ticket bought and used by appellant was also entitled, if he so requested, to have his baggage transferred to the limited express at Pittsburgh, but in order to become so entitled he was bound to make the request at Cincinnati, when checking his baggage, in order that it might be properly marked. Otherwise, and in the absence of such a request, the baggage would be carried from Pittsburgh, not upon the limited, but upon the day express, following after the limited.

Whether the appellant made the request is a disputed fact, but it is established that the trunk was not marked for transfer to the limited express, and was not so transferred, although the appellant himself went from Pittsburgh in that train.

The result was that the limited express carried the plaintiff in safety to his destination, while his trunk, which came along later on the day express, was lost in the flood that overtook that train.

On the trial the parties stipulated as to certain facts as follows:

"That the baggage in question was checked May 30th, 1889, at Cincinnati, Ohio, and was placed on the train upon which the said plaintiff took passage at said Cincinnati.

That said baggage was safely carried to Pittsburgh, Pennsylvania, and there May 31st, 1889, transferred to a train of the Pennsylvania Railroad Company, being the day express, which was due in New York two (2) hours after the limited express.

That the baggage in question was lost May 31st, 1889, in

what is known as the Johnstown flood—the baggage car, with its entire contents, including the baggage in question, being swept away.

That there was no negligence in the management of the train or in the care of the baggage in question while on the train."

The flood that was encountered far exceeded what had ever before been known in the region where it occurred. There was a great fall of rain lasting many hours, which raised the river to a height never before known, and caused wash-outs and landslides to an extent necessitating the train carrying the trunk to come to a stand. As the stream rose the train was shifted from place to place to keep it in safety, but because of wash-outs ahead and behind, it could not proceed far either in the direction of returning or advancing. After remaining in this position for several hours, the South Fork dam, which was located on a tributary stream a few miles above where the train stood, and formed a reservoir there at a very much greater elevation, broke and let into the narrow valley what witnesses describe as a great wall or wave of water from twenty to thirty feet high. Of course everything was swept before it. Trees, houses, railroad tracks, cars and engines, iron bridges and stone viaducts, were carried before its force, and, so complete was the devastation wrought, it was testified in the case that it cost the railroad company $600,000 to put its road-bed, tracks and bridges, within a distance approximating seven miles, in the condition they were in before the flood. Only those persons who were on the alert and near the hillsides escaped death.

The engineer of the locomotive to the train in question escaped only by fleeing up the hillside. His locomotive was turned over, and the baggage car, which was coupled to it, and in which appellant's trunk was being carried, was swept away, and it was testified that the car was never afterward found in recognizable form.

Under such conditions and circumstances, was the instruction given to the jury to find for the defendant proper?

It is the law of this State that the law of Ohio, the State in which the contract of transportation was made, governs the rights and liabilities of the parties to this action. Penna. Company v. Fairchild, 69 Ill. 260.

In Daniels v. Ballentine, 23 Ohio State, 532, which was a case of marine loss ensuing upon a delay in transportation, the rule is laid down that the storm from which the vessel would have escaped except for the delay, was the proximate cause of the loss, and not the delay.

And it was there said: "The two events (the delay and the storm) had in the nature of things, no natural or necessary connection. It was, for aught that appears, as reasonable to expect that the delay would be the means of avoiding extraordinary peril, in the further prosecution of the voyage, as it was to expect a contrary result. And while it is true, as the event proved, that the storm which caused the loss would not have been encountered if there had been no delay, it is at the same time evident that if the delay had been greater, and the default of the defendants, in that respect, more flagrant than it was, the same favorable result would have followed. The delay can not, therefore, be regarded as the proximate cause of the loss; * * * of that loss the storm was the proximate and efficient cause."

Such, also, is the rule in Pennsylvania: Morrison v. Davis, 20 Pa. St. 171; and in the Federal Supreme Court: R. R. Co. v. Reeves, 10 Wall. 176; and also in Massachusetts: Denny v. N. Y. C. R. R. Co., 13 Gray 481.

We think the instruction was properly given, notwithstanding it was equivalent to telling the jury that, although they should believe from the evidence that the contract was that appellant's trunk should be marked for and delivered to the limited express at Pittsburgh, and that its loss ensued from a failure to so transfer it, yet the appellee was excused and could not be recovered against; because the delay in its carriage was not the proximate cause of its loss, but the flood was, and the flood was the act of God.

What is, or what is not, "an act of God," does not seem to be susceptible of exact definition. McArthur v. Sears, 21 Wend. 190; Story on Bailments, Sec. 511.

Floods of unprecedented extent, against which human foresight can not reasonably guard, are always embraced within those extraordinary evidences known as "acts of God."

That the dam in question, which had stood and held the reservoir of water behind it for twenty years, was too weak to stand against the extraordinary swelling of water that had been occasioned by the great rainfall of the preceding hours, and which of itself had, according to the evidence, raised the stream to a height never before known, makes the vast rainfall and consequent flood none the less a divine force.

The rainfall and consequent flood were the proximate cause of the loss of the trunk, and the appellee should not be held responsible.

The judgment of the Superior Court is affirmed.